IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


JEFFREY E. PERELMAN, et al.    :    CIVIL ACTION
                               :
        v.                     :
                               :
RAYMOND PERELMAN, et al.       :    NO. 09-4792


MEMORANDUM

McLaughlin, J.                              February 12, 2010


        This action arises out of a series of financial
transactions made twenty years ago between a father and a son.
Disputes between the two family members and others have now
arisen over whether the transactions, which involved the son's
acquisition of several companies from his father and the
subsequent formation of a trust to benefit the son's daughter,
conform to the parties' agreement at the time.

        Two related lawsuits have been filed:  the above-
captioned action in this Court and an action in Pennsylvania
state court, both commenced on the same day.  In the state court
action, the father, Raymond Perelman, brings claims of fraud,
conversion, and breach of contract against his son, Jeffrey
Perelman, alleging that he violated the terms of their agreement
and that he mismanaged the assets that were placed in trust for
his daughter.

        In the action in this Court, Jeffrey Perelman, joined
by the co-trustee and a holding company involved in the

acquisition, seeks a declaratory judgment that his father has no viable claim against him or the other plaintiffs relating to the formation and management of the trust. Jeffrey Perelman also brings a defamation claim against his father and his brother, Ronald Perelman, alleging that they told others that he had defrauded his father and stolen money from his daughter.

The defendants in this Court, Raymond and Ronald Perelman, have now moved to dismiss or, in the alternative, stay this action in favor of the state court litigation. The Court will deny the motion, finding that it has no discretion to dismiss or stay the plaintiffs' defamation claims and that, although it has such discretion with respect to the declaratory judgment claims, the factors guiding the exercise of that discretion require that the Court retain jurisdiction over those claims.

I.    The Federal and State Law Complaints

    A.    The Federal Complaint

        The plaintiffs in this action are Jeffrey Perelman, suing both individually and as trustee of the Allison R. Perelman Trust ("the trust"), Frank Katz, suing in his capacity as co-trustee of the trust, and JEP Management, Inc. ("JEP"). JEP was involved in the acquisition of the companies acquired from

Raymond Perelman (the "purchased companies") and acts as a management company for the purchased companies.

The plaintiffs' original complaint, filed with this Court on October 19, 2009, contained only one count, seeking a declaratory judgment against Raymond Perelman. This count seeks a declaration concerning possible claims that Raymond Perelman may have against Jeffrey Perelman, the trustees of the trust, or the trust itself concerning the trust's formation and administration and Jeffrey Perelman's acquisition of the purchased companies. The count asks the Court to declare that Raymond Perelman has no standing to bring such claims regarding the trust, that he is barred from bringing any such claims by the statute of limitations and other defenses, and that he has no such viable claims.

The plaintiffs amended their complaint on November 12, 2009, to add Ronald Perelman as a defendant and to add a claim of defamation per se. The defamation claim is brought by Jeffrey Perelman in his individual capacity against both Raymond and Ronald Perelman.

The amended complaint makes the following factual allegations.

After working as an officer in his father's businesses for several years, Jeffrey Perelman resigned in 1989 due to escalating personal and business conflicts with his father.

Urged to repair their relationship by family and friends, Jeffrey Perelman began to negotiate his return to the family businesses later that year. <u>See</u> Am. Compl. at 6-7.

These negotiations concerned a series of transactions to effect the sale to Jeffrey Perelman of certain companies owned and controlled at the time by Raymond Perelman. Jeffrey Perelman alleges that Raymond Perelman identified three concerns regarding the structure of the transactions: (1) that Raymond Perelman would incur no tax obligations from the sale, (2) that Jeffrey Perelman's wife, Marsha Reines Perelman, would renounce her interest in certain of the transferred assets, and (3) that 50% of the assets and stocks transferred in connection with the transactions would be placed in a trust for the ultimate benefit of Jeffrey Perelman's daughter, Alison Perelman, and any other children Jeffrey Perelman may have. <u>See</u> <u>id.</u> at 7.

Jeffrey Perelman and Raymond Perelman negotiated through the summer and fall of 1989 to determine how the parties could best structure the transaction to meet Raymond Perelman's concerns. They jointly retained the law firm of Schnader, Harrison, Segal & Lewis to facilitate the transfer and signed a waiver of any conflicts arising from the joint representation. The amended complaint also alleges that Raymond Perelman employed a team of in-house counsel who were familiar with asset and stock

acquisition agreements, the formation of trusts, and the tax issues that arise from such transactions.  See id. at 8.

When negotiations concluded in January of 1990, Raymond Perelman agreed to sell to Jeffrey Perelman, and Jeffrey Perelman agreed to purchase, all of the stock or all of the assets of several of Raymond Perelman's companies.  As consideration, Jeffrey Perelman agreed to pay approximately $27 million and assume significant liabilities of the purchased companies.  The assets and stock of the purchased companies were ultimately sold through a series of twelve asset purchase agreements and stock purchase agreements (collectively "the purchase agreements"). See id. at 8-9.

Jeffrey Perelman placed stock and assets representing half of the ownership of the purchased companies into an irrevocable trust, then known as the "Jeffrey E. Perelman Trust" and subsequently renamed the "Alison R. Perelman Trust" in 2009. Jeffrey Perelman and Judge Arlin Adams, a family friend and advisor who helped negotiate the transaction and was a signatory to the trust agreement, were designated co-trustees.  Judge Adams served as co-trustee until plaintiff Frank Katz took Judge Adams' place in December of 2008.  See id. at 9.

Almost all of the corporations whose stock was owned by the trust were formed as "S" corporations in order to receive favorable tax treatment.  See id. at 26.  The only exception was

plaintiff corporation JEP, which was formed as a "C" corporation to address certain tax issues arising out of the formation of the "S" corporations. Jeffrey Perelman placed 50% of the common stock of JEP into the trust on or about January 24, 1990. See id. at 15-17.

The amended complaint states that, in or about 2007, Raymond Perelman began to make claims to family members, friends, and others that he was misled and defrauded by his son and others regarding the structural organization of the trust. See id. at 20. Specifically, the complaint alleges that Raymond Perelman has claimed that (1) he did not know that Jeffrey Perelman had the right to receive income from the trust during Jeffrey Perelman's lifetime, (2) he expected Alison Perelman to have ownership of the 50% of the stock and assets and/or to be the sole beneficiary of the trust from its inception, (3) Jeffrey Perelman either misled him about the structure of the trust and the formation of JEP, or Jeffrey Perelman and/or JEP breached some promise or agreement with Raymond Perelman regarding the stock and assets, (4) JEP was being used as an instrumentality to perpetuate fraud on the trust, and (5) Marsha Reines Perelman should have renounced all of her interests in all of the assets transferred, rather than the 50% transferred to the trust. See id. at 20-21.

6

The amended complaint alleges that Raymond Perelman has repeatedly threatened suit against Jeffrey Perelman, JEP and the trust and threatened to smear Jeffrey Perelman in the local media.  See id. at 24-25.  The amended complaint also alleges that Raymond and Ronald Perelman have made a series of defamatory statements about Jeffrey Perelman to family and mutual friends and acquaintances.  See id. at 28-29.

B.    The State Court Complaint

The same day that the original federal court complaint was filed, Raymond Perelman instituted a separate state court proceeding in the Court of Common Pleas of Philadelphia County by way of a Writ of Summons.  The state court complaint was filed under seal on October 27, 2009.  The sole plaintiff in the state court case is Raymond Perelman and the sole defendant is Jeffrey Perelman.

In his state court complaint, Raymond Perelman states that he entered the transaction with Jeffrey Perelman for the purpose of sharing his wealth with Jeffrey Perelman's children and enabling them to enjoy a lifestyle comparable to his own. See St. Ct. Compl. at 2-3.  He states that, with that purpose in mind, his agreement with Jeffrey Perelman was based upon certain specific and essential requirements and that Jeffrey Perelman understood and accepted all of his terms.  See id. at 3.

7

The complaint alleges that Jeffrey and Raymond thereby formed an agreement pursuant to which Jeffrey Perelman would put the appropriate legal mechanisms in place to accomplish Raymond Perelman's requirements. The complaint alleges that Jeffrey Perelman did not carry out that agreement and, therefore, breached the contract and defrauded Raymond Perelman by (1) making Jeffrey Perelman, not his children, the principal beneficiary of the trust and rendering his children only remote contingent beneficiaries, and (2) allowing Marsha Reines Perelman to renounce only 50% of her interest in the business interests instead of a full renunciation. See id. at 5-8.

Counts I, II and III of the state court complaint allege claims of breach of contract, fraud, and conversion on the theory that Jeffrey Perelman converted the business interests to his own use. See id. at 9-11. Counts IV, V and VI ask that the state court impose an express trust, a resulting trust, and/or a constructive trust upon the business interests. See id. at 11-13. The complaint requests various types of injunctive relief that would bring the trust into compliance with Raymond Perelman's understanding of the agreement and an award of damages as compensation for Jeffrey Perelman's wrongdoing. See id. at 13-14.

Jeffrey Perelman filed preliminary objections to Raymond Perelman's complaint on November 9, 2009.

C.    The Timing of the Filings

On the day that both suits were filed, counsel for the parties exchanged several emails and a phone call between the hours of 10 a.m. and 12 p.m.  Jeffrey Perelman's counsel first emailed Raymond Perelman's counsel at 10:11 a.m., to inform them that Jeffrey Perelman was poised to file his complaint.  The email stated that Jeffrey Perelman would wait until 1:00 p.m. to file his suit if his counsel was assured in writing that no lawsuits or other proceedings would be filed against Jeffrey Perelman in the interim.  The email requested that Raymond Perelman's counsel respond to confirm receipt of the email.  See Raymond Perelman's Mot. to Dismiss, Ex. C.

Jeffrey Perelman's counsel sent a second email a little over an hour later, at 11:27 a.m., stating that, because no confirmation of receipt or substantive response had been received, Jeffrey Perelman had instructed his counsel to file the complaint.  The email stated that counsel would proceed with the filing unless they received an acceptable response by 11:45 a.m. See Pls' Opp'n, Ex. A-2.

Raymond Perelman's counsel made a telephone call to Jeffrey Perelman's counsel sometime between 11:35 and 11:40 a.m. In the call, Raymond Perelman's counsel informed Jeffrey Perelman's counsel that Raymond Perelman had filed his state

9

court action that morning.  <u>See</u> Raymond Perelman's Mot. to Dismiss at 5.  The plaintiffs aver that, at that time, a member of Jeffrey Perelman's legal team had already left to file the plaintiffs' complaint in federal court.  <u>See</u> Pls' Opp'n at 6.

II.  <u>Analysis</u>

Federal courts are often presented with situations, like this one, where similar lawsuits concerning similar issues are pending in both federal and state courts.  The United States Supreme Court has made clear that, in the ordinary case, where the federal lawsuit involves so-called "coercive" claims seeking compensatory damages or injunctive relief, a federal court has "a virtually unflagging obligation" to exercise its jurisdiction and proceed with the case before it.  <u>See Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 817 (1976).

Because of this unflagging obligation, "[t]he general rule regarding simultaneous litigation of similar issues in both state and federal courts is that both actions may proceed until one has come to judgment, at which point that judgment may create a res judicata or collateral estoppel effect on the other action."  <u>Univ. of Md. at Balt. v. Peat Marwick Main & Co.</u>, 923 F.2d 265, 275-76 (3d Cir. 1991).  The only exception to this general rule for coercive claims is when one of the established abstention doctrines -- <u>Younger</u>, <u>Pullman</u>, <u>Burford</u>, <u>Colorado</u>

10

_River_, or others -- applies.  _See_ _Colorado River_, 424 U.S. at
813-17 (discussing abstention under _Younger v. Harris_, 401 U.S.
37 (1971); _Burford v. Sun Oil Co._, 319 U.S. 315 (1943); _R.R._
_Comm'n of Tex. v. Pullman Co._, 312 U.S. 496 (1941)).

Declaratory judgment actions, however, are treated
differently from coercive claims.  Declaratory judgments are
authorized in the federal courts by the Declaratory Judgment Act,
28 U.S.C. § 2201-2202.  The Act states:  "[i]n a case of actual
controversy within its jurisdiction . . . any court of the United
States . . . _may_ declare the rights and other legal relations of
any interested party seeking such declaration . . ."  28 U.S.C.
§ 2201(a) (emphasis added).  The United States Supreme Court has
interpreted the permissive language in the statute to give
federal courts discretion to decline to hear a declaratory
judgment action when there is simultaneous related litigation
pending in state court.  _See_ _Brillhart v. Excess Ins. Co. of Am._,
316 U.S. 491, 495 (1942); _see also_ _Wilton v. Seven Falls Co._, 515
U.S. 277 (1995).

In _Brillhart_, the United States Supreme Court held that
a district court has discretion to decline to exercise
jurisdiction over a declaratory judgment where another suit
presenting the same issues between the same parties is pending in
state court and where the questions in controversy between the
parties can better be settled in the pending state court action.

11

Brillhart was decided in 1942.  After the United States Supreme
Court decided Colorado River in 1976, with its emphasis on
federal courts' "unflagging obligation" to exercise their
jurisdiction, courts divided over whether Brillhart remained good
law.

In Wilton, the United States Supreme Court reaffirmed
Brillhart, holding that distinct features of the Declaratory
Judgment Act justified an exception from the ordinary rule of
Colorado River and granted federal courts "unique and substantial
discretion" to exercise jurisdiction over declaratory actions.
Wilton, 515 U.S. at 286.  In declaratory judgment actions, "the
normal principle that federal courts should adjudicate claims
within their jurisdiction yields to considerations of
practicality and wise judicial administration."  Id. at 288.

Given this legal framework, it is clear that if this
suit contained only the plaintiffs' coercive claim for
defamation, then, under Colorado River, the Court would have no
authority to dismiss or stay the claim in favor of the related
state court litigation unless one of the abstention doctrines
applied.[1]  It is equally clear that if this action contained only
a claim for declaratory relief, then the Court would have

---

[1]No party has argued that Colorado River abstention or any
other abstention doctrine applies in this case.

discretion to stay or dismiss the claim under Brillhart and
Wilton.

This case, however, contains both a coercive and a
declaratory judgment claim.  Neither the United States Supreme
Court nor the United States Court of Appeals for the Third
Circuit has considered the obligation of a federal court to
exercise its jurisdiction over a mixed case such as this one.
Those circuit and district courts that have considered the issue
are sharply divided in their approaches.

The United States Courts of Appeals for the Fifth and
Second Circuits (and the Tenth Circuit in dicta) have taken an
approach at one end of the spectrum of decisions.  They have held
that when a federal case combines a coercive claim with a
declaratory judgment claim, and the coercive claim is neither
frivolous nor brought solely to secure federal jurisdiction, then
the court must exercise jurisdiction over both the coercive and
the declaratory judgment claims and cannot exercise discretion
under Brillhart and Wilton to dismiss or stay the declaratory
judgment action.  See New Eng. Ins. Co. v. Barnett, 561 F.3d 392,
395 (5th Cir. 2009) (collecting cases); U.S. v. City of Las
Cruces, 289 F.3d 1170, 1181-82 (10th Cir. 2002) (dicta); Vill. of
Westfield v. Welch's, 170 F.3d 116, 125 n.5 (2d Cir. 1999).
Under these cases, when a non-frivolous coercive claim and a
declaratory judgment claim are both present, the governing

standard for both claims is the "unflagging" jurisdiction of
Colorado River.

The United States Court of Appeals for the Fourth
Circuit has taken a middle-ground position.  Like the Fifth and
Second Circuits, it has held that when a coercive claim and a
declaratory judgment claim are brought in one action, Colorado
River requires that the Court exercise unflagging jurisdiction
over the coercive claim.  See Great Am. Ins. Co. v. Gross, 468
F.3d 199, 211 (4th Cir. 2006).  The Fourth Circuit differs,
however, by suggesting that a federal court may continue to have
discretion under Brillhart and Wilton to decline to exercise
jurisdiction over the declaratory judgment claim.  It has
strongly suggested, however, that even if such discretion exists,
in most cases where a declaratory judgment action is joined with
a coercive claim that will remain in federal court, the proper
exercise of that discretion will be to retain jurisdiction.[2]

_____

[2]See Great Am. Ins., 468 F.3d at 211-12 (declining to take a
"definitive view" of the availability of Brillhart/Wilton
abstention in a case involving both declaratory and coercive
claims, because it found the factors for abstention were not
met); Chase Brexton Health Servs., Inc. v. Maryland, 411 F.3d
457, 466-67 (4th Cir. 2005) ("when a plaintiff seeks relief in
addition to a declaratory judgment, such as damages or injunctive
relief, both of which a court must address, then the entire
benefit derived from exercising discretion not to grant
declaratory relief is frustrated, and a stay would not save any
judicial resources"); Myles Lumber Co. v. CNA Fin. Corp., 233
F.3d 821, 824 (4th Cir. 2000) ("assuming the district court
possessed discretion to abstain from deciding the declaratory
judgment count, we conclude that under the circumstances present
here the court would abuse its discretion in doing so").

The United States Courts of Appeals for the Ninth and Seventh Circuits reach a result similar to that of the Fourth Circuit, but add a new element, the concept of whether a coercive claim is "independent" of the claim for declaratory relief. Both the Ninth and the Seventh Circuits consider a coercive claim to be independent when it, by itself, is "sufficient to invoke federal subject-matter jurisdiction and can be adjudicated without the requested declaratory relief." R&R Street & Co., Inc. v. Vulcan Materials Co., 569 F.3d 711, 715 (7th Cir. 2009) (citing United Nat'l Ins. Co. v. R & D Latex Corp., 242 F.3d 1102, 1113 (9th Cir. 2001)). A coercive claim can be "independent" even if it and the declaratory judgment claims involve the same or similar legal issues. See United Nat'l, 242 F.3d at 1112 (reversing a district court which had found claims to be independent of one another only "if one [claim] can be resolved without disposing of the legal issues raised in the other").

If, in an action containing both coercive and declaratory claims, the coercive claims are independent and non-frivolous, then the Ninth and Seventh Circuits hold that a federal court is required by Colorado River to exercise unflagging jurisdiction over the coercive claims and cannot stay or dismiss them. Like the Fourth Circuit, the Ninth and Seventh Circuits hold that, in that situation, a federal court retains

15

nominal discretion under <u>Brillhart</u> and <u>Wilton</u> to dismiss the declaratory claims, but that dismissing the claims would ordinarily be an abuse of discretion.  See <u>R&R Street</u>, 569 F.3d at 717 (if jurisdiction is being exercised over coercive claims, "[t]he district court then should retain the declaratory claim under <u>Wilton</u>/<u>Brillhart</u> . . . in order to avoid piecemeal litigation."); <u>see also</u> <u>Gov't Employees Ins. Co. v. Dizol</u>, 133 F.3d 1220, 1225 (9th Cir. 1998) ("[W]hen other [coercive] claims are joined with an action for declaratory relief, the district court should not, as a general rule, remand or decline to entertain the claim for declaratory relief.").  Where a coercive claim is not independent, however, the Ninth and Seventh Circuits hold that a court can exercise discretion under <u>Brillhart</u> and <u>Wilton</u> over both the coercive and declaratory claims and decline to hear them both.[3]

Several district courts in those circuits that have not addressed the issue have taken yet another approach, referred to as the "heart of the action" analysis.  <u>See, e.g.</u>, <u>ITT Indus., Inc. v. Pacific Employers Ins. Co.</u>, 427 F. Supp. 2d 552, 556

---

[3]    The United States Court of Appeals for the Eighth Circuit takes yet another approach to the issue.  That court holds that, when a case combines both coercive and declaratory claims, a federal court does not have to exercise unflagging jurisdiction over the coercive claims "so long as the further necessary or proper relief would be based on the court's decree so that the essence of the suit remains a declaratory judgment action."  <u>Royal Indem. Co. v. Apex Oil Co.</u>, 511 F.3d 788, 793 (8th Cir. 2008).

(E.D. Pa. 2005).  Under this approach, a court faced with an action that contains both coercive and declaratory claims determines at the outset whether the "heart" of the matter is coercive or declaratory.  If coercive, then the court applies the unflagging discretion of <u>Colorado River</u> to both the coercive and declaratory claims; if declaratory, then the court has discretion under <u>Brillhart</u> and <u>Wilton</u> to decline to exercise jurisdiction over both claims.

To determine what type of claims constitute the "heart," courts applying this test look to whether the outcome of the declaratory claim "hinges on the outcome" of the declaratory ones. <u>See</u> <u>ITT</u>, 427 F. Supp. 2d at 556; <u>Lexington Ins. Co. v. Rolison</u>, 434 F. Supp. 2d 1228, 1235 (S.D. Ala. 2006); <u>Coltec Indus., Inc. v. Continental Ins. Co.</u>, 2005 WL 1126951 at *2 (E.D. Pa. May 11, 2005).  Thus, in both <u>Coltec</u> and <u>ITT</u>, the district courts found that coercive bad faith and breach of contract claims "hinged" on the declaratory claims because their outcome was "dependent" on how the insurance contracts at issue were interpreted in the declaratory judgment claim.  <u>ITT</u> at 567; <u>Coltec</u> at *3.

In practice, the courts following this approach have uniformly found the "heart" of the claims before them to be declaratory and found that they had discretion to dismiss both the coercive and declaratory claims under <u>Brillhart</u> and <u>Wilton</u>

17

(although in at least one case, the court did not exercise that discretion and retained jurisdiction). See <u>ITT</u>, 427 F. Supp. 2d at 557, 563 (finding the "heart" of the action to be declaratory and declining to exercise jurisdiction); <u>Coltec</u>, 2005 WL 1126951 at *3-*4 (same); <u>Lexington</u>, 434 F. Supp. 2d at 1238 (same); <u>see also</u> <u>Parsons & Whittemore, Enters., Corp. v. Cello Energy, LLC</u>, 2008 WL 227952 at *15-*17 (S.D. Ala. Jan. 25, 2008) (finding "heart" of the action to be declaratory but retaining jurisdiction).

Faced with this fractured landscape of decisions, the Court must now decide which, if any, of these approaches to apply in this case. The Court begins by rejecting the approach of the Fifth and Second Circuits, which would require the non-discretionary exercise of jurisdiction over both coercive and declaratory claims when both are brought together in one action. As noted by the Seventh Circuit, "the mere fact that a litigant seeks some non-frivolous, non-declaratory relief in addition to declaratory relief" should not mean that a district court's "<u>Wilton/Brillhart</u> discretion to decline to hear the declaratory claim should be supplanted by the narrower <u>Colorado River</u> doctrine" because doing so would "unduly curtail[ ] a district court's 'unique and substantial discretion' to abstain from hearing claims for declaratory relief." <u>R&R Street</u>, 569 F.3d at 716 (citing <u>Wilton</u>, 515 U.S. at 286).

18

Similarly, the Court declines to adopt the "heart of the matter" test adopted by several district courts. Courts adopting this test have emphasized that its "flexible" approach preserves what the United States Supreme Court in Wilton described as courts' "unique and substantial discretion" to abstain from declaratory actions for reasons of "practicality and wise judicial administration." See, e.g., Lexington, 434 F. Supp. 2d at 1237-38 (quoting Wilton, 515 U.S. at 288); Coltec, 2005 WL 1126951 at *3 (same). The Court is concerned, however, that, in seeking to preserve the discretion allowed by Wilton, the "heart of the matter" test fails to give adequate consideration to Colorado River.

The abstention doctrine announced in Colorado River was expressly designed to identify the narrow circumstances "permitting the dismissal of a [coercive] federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration." 424 U.S. at 818. The decision, therefore, leaves no room for concerns about "wise judicial administration" to justify declining jurisdiction over coercive claims outside of the limited and exceptional occasions where the requirements for Colorado River abstention are met. By allowing courts to decline jurisdiction over coercive claims merely because they are combined with declaratory claims and because their outcome can be said to "hinge" on the declaratory judgment,

the Court believes the "heart of the matter" test improperly expands the discretion of the courts and ignores the "strict duty" imposed upon them "to exercise the jurisdiction that is conferred upon them by Congress." Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716 (1996) (citing Colorado River, 424 U.S. at 821).

The Court therefore believes that the test chosen to evaluate the exercise of jurisdiction over actions involving both coercive and declaratory claims must acknowledge and reconcile the competing imperatives of both Colorado River and Brillhart/Wilton. The Court believes that the test which best accomplishes this task is the "independent claim" test adopted by the United States Courts of Appeals for the Ninth and Seventh Circuits.

Under that test, a court must first determine if the coercive claims are non-frivolous and could have been brought "independently" in federal court, without the accompanying declaratory action. If so, then Colorado River applies and the court has no discretion to dismiss the coercive claims. This ensures that a court's "virtually unflagging obligation" to hear such claims is not disregarded merely because they have been combined with an action for a declaratory judgment. The test also provides that, whether or not the coercive claims are found to be independent, the court will have discretion to exercise

jurisdiction over the declaratory claims under <u>Brillhart</u> and
<u>Wilton</u>.  This aspect of the test protects the "unique and
substantial discretion" over such claims granted by the
Declaratory Judgment Act, even if the declaratory claims are
brought in tandem with coercive ones.  Of all the competing
approaches taken in the federal court, therefore, the independent
claim test best preserves the different levels of jurisdictional
discretion permitted to coercive and declaratory claims under
<u>Colorado River</u> and <u>Brillhart</u>/<u>Wilton</u>.

Having determined what test to apply, the Court now
turns to its application.

The coercive defamation claim in this case is both non-
frivolous and independent.  In general, a claim is only frivolous
when it involves an indisputably meritless legal theory or a
clearly baseless or fantastic factual scenario.  <u>Mitchell v.
Horn</u>, 318 F.3d 523, 530 (3d Cir. 2003) (discussing frivolousness
in the context of the Prison Litigation Reform Act).  The
defamation claim here meets this low threshold.

The defamation claim is independent because, if the
claim were brought by itself without the requested declaratory
relief, the Court would have subject-matter jurisdiction over the
claim.  The parties to the defamation claim are alleged to be
citizens of different states and the requested damages, including

emotional harm and reputational injury, appear to meet the amount-in-controversy requirement.

Because the defamation claim is both non-frivolous and independent, the Court finds that it has an "unflagging obligation" under Colorado River to exercise jurisdiction over it. The defendants' motion to dismiss is therefore denied as to Jeffrey Perelman's defamation claims.

With respect to the declaratory claims, the Court retains discretion under Brillhart and Wilton to decline to exercise jurisdiction. In Brillhart, the United States Supreme Court held that a district court deciding whether to dismiss or stay a declaratory action in favor of a state proceeding should consider whether the questions in controversy can better be settled in the state proceeding. To do this, a court may need to examine the scope of the pending state proceeding and the defenses available there, as well as whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding and whether necessary parties have been joined or are amenable to process. Id., 316 U.S. at 495. Wilton described this inquiry as turning on "considerations of practicality and wise judicial administration." 515 U.S. at 288.

The United States Court of Appeals for the Third Circuit has identified several additional factors to be considered in exercising discretion under Brillhart and Wilton:

(1) the likelihood that a federal court declaration will resolve
the uncertainty of obligation which gave rise to the controversy,
(2) the convenience of the parties, (3) the public interest in
settlement of the uncertainty of obligation, and (4) the
availability and relative convenience of other remedies.  Terra
Nova Ins. Co., Ltd. v. 900 Bar, Inc., 887 F.2d 1213, 1224-25 (3d
Cir. 1989).  Courts are also to look with disapproval upon any
attempt to use a declaratory action as a "method of procedural
fencing, or as a means to provide another forum in a race for res
judicata."  Terra Nova, 887 F.2d at 1225.  The exercise of
discretion should attempt to promote judicial economy through the
avoidance of duplicative and piecemeal litigation and should
avoid, if possible, deciding uncertain or undetermined issues of
state law.  State Auto Ins. Cos. v. Summy, 234 F.3d 131, 134-35
(3d Cir. 2000).

        Not all of these factors are applicable here.  The
factors set out by the Supreme Court in Brillhart and Wilton and
by the Court of Appeals in Terra Nova and Summy were all
formulated in the context of cases in which the federal action
contained only declaratory claims and, therefore, in which a
decision to stay or dismiss would necessarily terminate the
federal litigation and leave all claims to be decided in state
court.  Many of these factors have much less relevance in cases
like this one, where a coercive claim will remain in federal

court, whether or not the declaratory claims are dismissed or stayed. For example, the question of whether the claims of all parties in interest could be resolved in the pending state court proceeding has much less pertinence when, as a practical matter, at least some of those claims will continue to be litigated in federal court.[4]

---

[4]  Another factor with less relevance in a case like this one is the judicial interest in not allowing a declaratory judgment to used as a "method of procedural fencing, or as a means to provide another forum in a race for res judicata." Terra Nova, 887 F.2d at 1225. Terra Nova, 887 F.2d at 1225. Although not to be encouraged, a certain amount of procedural gamesmanship is tolerated in some instances to advance more important interests. Under Colorado River, for example, if related coercive suits have been brought in federal and state courts, a federal court does not have discretion (outside of the stringent requirements of Colorado River abstention itself) to decline jurisdiction in favor of the state court litigation on the ground that the federal suit was filed for strategic reasons or as part of a race to res judicata. The unflagging duty of federal courts to exercise their jurisdiction trumps general concerns over gamesmanship. Similarly, in situations like this, where a court has discretion to dismiss or stay declaratory claims, but where coercive claims will continue to be litigated in federal court, a court's interest in discouraging gamesmanship in all but the most extraordinary cases will likely be outweighed by the need to avoid piecemeal litigation and advance judicial economy.

To the extent, however, that the issue of "procedural fencing" is relevant to the Court's exercise of its discretion over the declaratory claims in this case, the Court cannot find, on this record, that any such gamesmanship has occurred. Although the federal and state actions were commenced within hours of each other, there is no evidence that the plaintiffs filed their complaint solely to secure a federal forum. The plaintiffs aver that they did not know that Raymond Perelman had drafted a state court complaint before they began the process of filing their own in federal court. See Pls' Opp'n at 5-6.

In cases like this one, where jurisdiction will continue to be exercised over a coercive claim, the Court believes that the paramount consideration in deciding whether to dismiss or stay declaratory claims is whether, as a matter of "practicality and wise judicial administration," doing so will be more efficient and convenient for the court and the litigants. Involved in this inquiry are some of the factors identified in Terra Nova and Summy, including the convenience of the parties, judicial economy, and the avoidance of duplicative and piecemeal litigation. As the other courts which have adopted the "independent claim" test have found, these factors will usually point to retaining jurisdiction over declaratory claims when they are joined with coercive claims that will remain in federal court. See R&R Street, 569 F.3d at 717; Dizol, 133 F.3d at 1225.

Here, the Court finds no justification for declining to exercise jurisdiction over the plaintiffs' request for a declaratory judgment. Because the Court must proceed with the plaintiff's defamation claims, dismissing or staying the declaratory claims will not save effort, but will instead multiply it by ensuring that two separate proceedings necessarily proceed in separate courts. The interests of judicial economy and the need to avoid piecemeal litigation therefore weigh heavily and dispositively against declining jurisdiction over the declaratory claims.

Having found that it must exercise its jurisdiction over the plaintiffs' coercive defamation claims under <u>Colorado River</u> and that it should exercise its discretionary jurisdiction over the plaintiffs' declaratory claims under <u>Brillhart</u>/<u>Wilton</u>, the Court will deny the defendants' motions to dismiss.

An appropriate Order shall issue separately.